## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JUDE BOLIERE,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:22-cv-2246-HLT** |
| **ROBERT BRODGEN'S OLATHE BUICK-GMC INC.,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Jude Boliere sues his former employer Defendant Robert Brogden's Olathe Buick-GMC Inc. for unlawful retaliation and age, national origin, and race discrimination under the ADEA, Title VII, and § 1981. Plaintiff claims Defendant discriminated against him by demoting him in November 2020, paying him less than other employees, and terminating his employment in May 2021. He contends Defendant subjected him to a hostile work environment because his general manager and colleagues used racial slurs and made comments demonstrating age- and national-origin-based bias. And Plaintiff claims Defendant demoted and fired him in retaliation for complaining about his treatment.

Defendant moves for summary judgment on all claims because Plaintiff lacks evidence to support his claims. Doc. 58. Defendant also moves to strike a significant portion of Plaintiff's evidence because this evidence (1) is unauthenticated, (2) is inadmissible as hearsay or not based on personal knowledge, (3) fails to meet the requirements of an affidavit or declaration, and (4) contains testimony from undisclosed witnesses (Melissa Rodriguez and Preskuf Taylor). Doc. 74. Lastly, Defendant moves to remove a reference to the ADA in the pretrial order. Doc. 79.

In reverse order, the Court grants the motion to modify and removes the ADA reference in the pretrial order. The Court strikes Taylor's declaration but denies the rest of the motion to strike.

And the Court denies summary judgment on Plaintiff's race-based hostile work environment claim but grants summary judgment on all remaining claims.

## I.     BODY OF EVIDENCE

The Court typically starts summary-judgment orders with a concise statement of the factual background. That approach won't work here because Plaintiff offers several items of evidence that Defendant contends are inappropriate and must be stricken from the record. The Court therefore must initially resolve the motion to strike and determine the body of evidence properly before it.

Defendant is rightly frustrated with several of Plaintiff's litigation tactics. The Court shares some of that frustration and notes that these tactics have made resolution of the pending motions substantially more complicated. But some of the tactics are not as egregious as Defendant suggests. For example, Defendant contends that the Court should strike multiple exhibits as unauthenticated and lacking foundation. Doc. 74 at 8-9 (outlining challenged exhibits). The Court reviewed these documents and finds that they are sufficiently authenticated for purposes of summary judgment based on appearance, content, and substance. *See, e.g.*, Doc. 66-8 (check register on Defendant's letterhead); Doc. 66-9 (unemployment application). Plaintiff could have done more, and best practice counsels in that direction. But the Court will consider the documents that Defendant challenges for lack of authenticity and foundation in resolving the summary-judgment motion.

Defendant also challenges the written statements by Rodriguez and Taylor. Docs. 67 and 68. Defendant contends Plaintiff did not timely disclose these witnesses and their declarations suffer from multiple flaws. Doc. 74 at 10-11. The Court is mindful of Fed. R. Civ. P. 37(c) and the factors courts consider in determining whether a violation of Rule 26 is substantially justified or harmless. *See Assessment Techs. Inst., LLC v. Parkes*, 2021 WL 4860553, at *2 (D. Kan. 2021) (outlining factors).

The Court will consider Rodriguez's declaration. Defendant told Plaintiff that it was terminating his employment based on an argument he had with Rodriguez about commissions. Both parties thus knew of her existence and knew that she could provide relevant evidence about the argument that precipitated Plaintiff's termination. Indeed, Defendant identified Rodriguez in its initial disclosures but elected not to take her deposition or otherwise secure her testimony. Plaintiff eventually secured her statement and offered it at summary judgment. Plaintiff's approach is not ideal and will not always be tolerated. *See, e.g.*, *Hunter v. Costco Wholesale Corp.*, 2023 WL 2734237 (D. Kan. 2023). But the Court finds under the facts of this case that Defendant is neither prejudiced nor surprised by the identification of Rodriguez. There is no evidence that her testimony will disrupt trial proceedings. And there is likewise no evidence of bad faith. The Court does not strike her declaration under Rule 37.

Defendant also challenges her declaration as including hearsay. It is true that her declaration is technically hearsay. But Rule 56 allows courts to consider hearsay so long as it can be presented in an admissible form at trial. Rodriguez's statements largely appear to be based on personal knowledge. There are some statements about what other people told her, but the Court understands those statements to be communicating her impressions, beliefs, and observations and does not understand them to be offered for the truth of the matter asserted. The Court thus denies the motion to strike Rodriguez's declaration.

This leaves Taylor's statement. Defendant challenges Taylor's statement as not timely disclosed and lacking personal knowledge. These challenges might have merit, but the Court need not reach them because Taylor does not even offer a declaration that complies with the rules. Rule 56(c) allows a party to rely on affidavits or declarations during summary judgment. A declaration is an unsworn statement that satisfies the substantive requirements of 28 U.S.C. § 1746.

This statute requires an unsworn declaration to be subscribed under penalty of perjury and dated in "substantially" this form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746(1). The Taylor declaration is deficient. The Court recognizes this is a technicality. It also could have been easily corrected had Plaintiff sought to do so. But he did not, so the Court strikes the declaration.[1]

Defendant overplays its hand throughout the motion, banking on the Court striking much of Plaintiff's evidence based on Plaintiff's counsel's past practices. The Court has cautioned Plaintiff's counsel in the past for questionable discovery and dispositive motions practices. *See, e.g.*, *Jackson v. United Gov't of Wyandotte Co.*, 2023 WL 3653729, at *2 n.3 (D. Kan. 2023). But each case rests on its own facts. And the facts in this case are not like those in *Hunter* and *Jackson*. The Court declines to strike any evidence <u>except</u> the Taylor declaration. The Court further declines to sanction Plaintiff for counsel's litigation tactics.

## II.    BACKGROUND[2]

Plaintiff worked for Defendant's car dealership from October 2020 through May 2021 (approximately seven months). Plaintiff was a sales manager for the first month. He then worked as a salesperson for the remaining six months before Defendant fired him. Plaintiff is a black male of Caribbean descent who is over the age of sixty. He speaks with an accent.

Phil Skid was the general manager of the car dealership. Skid is a white male over age forty. Skid knew Plaintiff from the auto industry before Plaintiff applied to work at the dealership. But Plaintiff had been out of the industry for several years while working as an Uber driver. Skid

---

[1]   Despite finding the declaration improper, the Court has reviewed its content and considered the pertinent facts contained therein – some are even included in the background to demonstrate that consideration of Taylor's declaration does not change the outcome of the summary-judgment motion.

[2]   For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to the nonmoving party.

hired Plaintiff to be a sales manager based on Plaintiff's representation of his extensive sales and management experience in the auto industry. Plaintiff signed a compensation plan as an at-will employee.

Plaintiff was unfamiliar with Defendant's software system. Plaintiff struggled to learn the software, and Defendant maintains that Plaintiff's inability to adapt impacted his effectiveness as a sales manager. But Defendant did not train Plaintiff on the software. Skid expected that Plaintiff would be a "plug-and-play manager," not a manager-in-training. Skid told Plaintiff after a month that the dealership was approaching a slow season and could no longer pay Plaintiff's sales manager salary. Skid made this decision before the month-end sales figures were tabulated. And despite Skid's decision, some other employees have characterized Plaintiff as a "good" manager.

Plaintiff asked to transition to a salesperson instead of being fired. Skid transferred Plaintiff to a salesperson role.[3] Plaintiff and Skid signed a new compensation plan effective November 1, 2020. Plaintiff earned $68,703.61 in total compensation for the seven months he was employed by Defendant. Plaintiff was not allowed to negotiate either of his compensation plans but others were. Some salespeople were able to make more than $250,000 per year.

Plaintiff claims that several younger, less-experienced, white employees became managers at the dealership and were given opportunities he was denied. Specifically, he identifies the following employees:[4]

- Tino Stowers (black male, between thirty and forty years old) was hired as a sales manager about three weeks after Plaintiff was hired and remained a manager after Plaintiff was demoted, but he later switched to a sales position;

---

[3]   Skid fired Plaintiff from the sales manager role and rehired him as a salesman. Both parties refer to the change as a demotion, and the terminology is immaterial here.

[4]   To be fair, Defendant actually compiled most of this list and the Court assembled the rest from deposition testimony. Nowhere in Plaintiff's brief does he specifically identify this list in a helpful fashion.

- Todd Chenault (white male, late thirties to early forties) was hired as a manager two weeks after Plaintiff was demoted and had a better income than Plaintiff;

- Don Chuckley (white male, early thirties) was hired as a manager six weeks after Plaintiff was demoted;

- Paul Levin (white male, mid-forties) was hired as a manager ten weeks after Plaintiff was demoted and remains a manager; and

- Nathaniel Garibaldo (white male, early/mid-forties) was hired after Plaintiff was demoted and earned nearly $20,000 in sales commission in February 2021.

Skid acknowledged during his deposition that an experience gap necessarily existed between these employees and Plaintiff because they were younger than Plaintiff.

Skid referred to Plaintiff's sales methods as "ancient history." He referred to Taylor, another black salesperson, as an "old piece of shit." He also made a comment about not wanting to bring back the "old guys" post-COVID-19. And Skid fired at least two other employees who were approximately fifty to sixty years old (Bruce Moore and Rick Frentop).

Plaintiff's manager while he was a salesperson was Sebastian Granger. Granger is a black male of Trinidad descent. Granger was friends with Skid, as well as his subordinate.

The work environment at the dealership was toxic. Other employees made fun of Plaintiff. Salespeople regularly used profanity, argued with each other, and called each other names over car deals. Skid often played rap music in the dealership and "would constantly and openly use the word 'nigga' whether singing song lyrics or referring to [B]lack employees." Doc. 67 at 2. Plaintiff began recording conversations at the dealership with his phone. And Plaintiff made it clear to Granger that he intended to file a lawsuit. At different times, Skid represented both that he would fire someone if he thought that person was going to sue the dealership, and also that he would not.

Plaintiff claims that the following events contributed to a hostile work environment at the dealership:[5]

- Non-black employees were getting leads that black employees were not.

- Chenault yelled, screamed, and cursed at Plaintiff and another employee in late December 2020. A customer overheard the incident.

- Plaintiff was in a meeting with salespeople and management in January 2021 when he heard Skid use a racial slur. Skid did not use the word in reference to any particular person or use it in anger. Instead, Skid was asking Granger why he supported Donald Trump when he (Trump) "doesn't like [] the N-word, n-i-g-g-a." Doc. 66-4 at 19.

- Plaintiff asked Skid to transfer him to a new Kia dealership in February 2021. Skid denied the request.

- Plaintiff was removed from the sales lead rotation, which impacts pay.

- Garibaldo verbally abused Plaintiff and used vulgar language in front of customers in March 2021.

- Peter Sargent, a white finance manager, blew up at Plaintiff in April 2021. Sargent told Plaintiff to "go away" is a disrespectful manner. Plaintiff's complaints about the incident were not investigated and no action was taken.

Plaintiff complained about many of these matters and others while he worked at the dealership. Rodriguez, another salesperson, states in her declaration that Plaintiff "openly complained a lot about discrimination, retaliation, unfair treatment, and the work environment at [the dealership]," seemingly as a daily event. Doc. 67 at 3. Plaintiff's complaints included the following:

- Before November 1, 2020 and after: Beginning shortly after he was hired, Plaintiff repeatedly expressed dissatisfaction with Defendant's work environment. Plaintiff voiced his frustration with the lack of software training. Plaintiff continued complaining after his demotion.

- December 4, 2020: Plaintiff opened an EEOC inquiry alleging age discrimination. Plaintiff cited an incident date of November 2, 2020. There is no evidence suggesting that Defendant was aware of the inquiry.

---

[5]   Plaintiff's briefing does not specifically identify this list or make clear exactly _what_ events contributed to a hostile work environment. The Court has attempted to synthesize and summarize Plaintiff's position for clarity's sake.

- <u>January 21, 2021</u>: Plaintiff complained to Granger about Skid's use of a racial slur in the sales meeting.

- <u>Undated</u>: Rodriguez advised Skid on at least two occasions of Plaintiff's complaints about the unfair treatment and the work environment.

- <u>March 1 and April 1, 2021</u>: Plaintiff complained to Skid about being removed from the sales lead rotation.

- <u>March 6, 2021</u>: Plaintiff documented a complaint he made about how Garibaldo treated him. Plaintiff emailed himself to describe how Garibaldo verbally abused him and used vulgar language in front of customers.

- <u>April 7, 2021</u>: Plaintiff complained to Lynda Cole, the dealership's Controller, about Sargent blowing up at him.

- <u>May 4, 2021</u>: Plaintiff complained to Megan Morrison, the office manager, about not receiving proper compensation.

Plaintiff got into an argument with Rodriguez on May 5, 2021. Plaintiff believed a customer was his but Rodriguez thought the customer was hers. Plaintiff told Rodriguez to "stop bitching." Plaintiff's argument with Rodriguez occurred within earshot of a sales floor and may have been overheard by several customers.[6] Rodriguez also used profanity and believes that the exchange with Plaintiff was not out of the ordinary. She did not complain about Plaintiff's treatment of her during the argument. Rodriguez states that Moore (another black, older man) was fired because of false allegations that he had sexually harassed her.[7] She represents that she never complained about Moore, either.

Granger asked Skid for approval to terminate Plaintiff's employment based on Plaintiff's confrontation with Rodriguez. Skid approved. Granger terminated Plaintiff's employment that same day (May 5, 2021). Granger wrote the following on Plaintiff's termination form: "Jude, on

---

[6]  Plaintiff attempts to controvert Defendant's description of the location of his argument with Rodriguez. But Plaintiff fails to substantiate his assertion with record citations.

[7]  Plaintiff does not explain how Rodriguez knows the reason for Moore's termination or support the statement with any evidence that would be admissible at trial.

all these occasions, I have had complaints from both staff and customers about you. Today in front of numerous colleagues you disrespectfully told Melissa to stop bitching. As you are aware, that behavior is unacceptable and has caused Melissa serious distress." Doc. 59-4 at 12. Rodriguez only learned later that Defendant terminated Plaintiff's employment over the dispute with her.

## III.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## IV.    ANALYSIS

### A.    Discrimination Claims Based on Age, National Origin, and Race.

Plaintiff claims that he was demoted, paid less, and terminated because of his age, national origin, and race. He does not have direct evidence of discrimination so his claims are all subject to the familiar *McDonnell Douglas*[8] burden-shifting framework.

The *McDonnell Douglas* framework has three steps. First, a plaintiff must make a prima facie case. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Second, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action. *Id.* Third,

---

[8]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

the burden shifts back to the plaintiff to show that the "legitimate" and "non-discriminatory" reasons the defendant offered were pretext for unlawful discrimination. *Id.* "[P]retext is shown by demonstrating such weaknesses, implausibilities, inconsistencies, and incoherencies in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (citation omitted). Typical methods are "direct evidence that the defendant's stated reason for the adverse employment action was false," and evidence of differential treatment from "other similarly situated employees who violated work rules of comparable seriousness." *Id.* at 1167-68 (citation omitted).

The Court applies this framework to each of Plaintiff's discrimination claims.

### 1.   Age Discrimination Claim.

#### a.   Prima Facie Case.

Plaintiff first claims that Defendant discriminated against him because of his age. A plaintiff must show the following elements for a prima facie case of age discrimination: (1) he belongs to the ADEA-protected class; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) his employer treated him less favorably than other employees who were substantially younger. *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996) (clarifying that the fourth element requires that the younger employee be "substantially younger," not just outside of the protected class). Plaintiff's burden at this stage is not heavy. *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).

Plaintiff fails to meet his prima facie burden on his age discrimination claim. He meets the first and third elements. Plaintiff belongs to the protected class because he is over the age of sixty. And Plaintiff suffered from at least two adverse employment actions: demotion and termination.[9] He also alleges that he was paid less than younger employees.[10] But Plaintiff fails to present evidence showing that he was qualified for the sales manager position. And he presents only conclusory allegations (as opposed to <u>evidence</u>) that he was treated less favorably than substantially younger employees.

Plaintiff claims that he was qualified because Granger and Rodriguez thought he was a good manager and he had significant experience in the auto industry. But Skid testified that he hired Plaintiff to be a "plug-and-play" sales manager who could hit the ground running and would not need extensive training. Plaintiff admits that he needed training on the software. In fact, he complained that Defendant did not provide the training. And Plaintiff presents no evidence that he was able to satisfactorily use the software. He has not shown he was qualified for the sales manager position.

Plaintiff also tries to show that Defendant treated him less favorably than substantially younger employees. He points to evidence that Defendant hired younger employees in manager roles after he was demoted. He claims they were less qualified because they had less experience.

---

[9]  It is unclear whether Plaintiff claims that his eventual termination was age-based. Plaintiff discusses how two other older employees were fired, suggesting that he contends the same thing happened to him. But the pretrial order does not specifically allege termination in the statement of Plaintiff's ADEA claim. Doc. 65 at 6. (It actually does not mention termination under any of Plaintiff's three legal claims, but Plaintiff's factual contentions make clear that Plaintiff intends to rely on his final termination.) Nevertheless, the Court includes analysis on Plaintiff's termination in an effort to be thorough.

[10]  Plaintiff separately discusses a "wage discrimination claim" in his response. But the pretrial order does not contain a separate claim for wage discrimination. Failure to include a claim in the pretrial order constitutes waiver. Plaintiff has thus waived this claim. But it appears that Plaintiff means to allege a separate adverse employment action of being paid less than other similarly situated employees. The Court thus addresses Plaintiff's lower pay as an adverse action instead of a stand-alone wage discrimination claim.

And Plaintiff contends that they were given more opportunities than he was and were provided with sales leads when he was not.

Defendant did hire younger employees in management roles. But Plaintiff points to no evidence indicating how the management positions were similar, identifying who made the hiring decision, describing what the requirements and duties were for each position, outlining the qualifications of the younger employees, or explaining what Defendant's business situation was at the time. There is no comparative evidence from which a reasonable jury could find that Defendant treated Plaintiff less favorably than younger employees.

Plaintiff's evidence that he did not receive opportunities or sales leads when younger employees did is speculative. Plaintiff complained about a lack of sales leads. But he presents no evidence suggesting it was because of his age. And he presents nothing but a conclusory allegation that he received fewer opportunities or less pay than younger employees. Plaintiff offers his own compensation plan but no one else's for comparison. Russell Dent, the dealership's acting COO, testified that a few salespeople earned more than $250,000 annually. But one of those salespeople was Taylor, who is black and over age sixty. Dent also named Phillip Miller, who is black and in his mid-sixties.[11] Plaintiff has not backed up his allegations of age-based unequal treatment with evidence. He has not made a prima facie case of age discrimination.[12] But even if he had, the claim fails under the remainder of the *McDonnell Douglas* test.

---

[11]   Dent testified that Miller was the "business elite manager" at one point, but also named him as a salesperson.

[12]   The Court recognizes Plaintiff's low burden at this stage. Perhaps some of this evidence is better considered in the pretext inquiry. But regardless of whether the Court considers the evidence now or in the pretext analysis, the end result is the same.

### b.      Legitimate, Non-Discriminatory Reason.

Defendant proffers a legitimate, non-discriminatory reason for Plaintiff's demotion. Plaintiff was demoted because he did not learn the software and Defendant could not afford to pay for a store manager-in-training. And Plaintiff was terminated because he told Rodriguez in the presence of customers to "stop bitching." As for pay, Plaintiff was paid according to a written pay plan that he signed. Defendant's obligation at the second step is "exceedingly light" and "one of production, not persuasion." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011). Defendant meets its burden.

### c.      Pretext.

Plaintiff must present evidence that Defendant's proffered reasons for its actions are pretext for age discrimination. This is where Plaintiff unquestionably fails. Plaintiff argues that the following facts show pretext: (1) Plaintiff was demoted before complete month-end sales data was compiled; (2) others considered him a "good" manager yet younger employees received more opportunities; (3) his comment to Rodriguez was not termination-worthy because everyone used that type of language; and (4) Skid used derogatory age-based comments such getting rid of the "old guys," calling Plaintiff's sales methods "ancient history,"[13] and referring to Taylor as an "old piece of shit."[14] The Court addresses each of these arguments below.[15]

---

[13] Skid made the "ancient history" comment during his deposition, long after the alleged discriminatory acts. Considering the comment at all is generous. It does nothing to demonstrate Skid's mindset at the time of the adverse actions.

[14] This characterization is found in Taylor's declaration. It is referenced here only to show that it does not impact the outcome.

[15] Arguments 2 and 4 are included in the section on age discrimination in Plaintiff's brief. Doc. 66 at 32. The Court extrapolated argument 1 from Plaintiff's argument about race discrimination. *Id.* at 25. And the Court included argument 3 because it is a running theme throughout Plaintiff's brief.

First, the Court addresses the timing of Plaintiff's demotion. The Court will not sit as a "super-personnel" department that questions Defendant's business judgment in employment matters. Whether Defendant should have gathered more information before demoting Plaintiff is not before the Court. Whether Plaintiff's demotion was hasty, irresponsible, or based on incomplete information is immaterial. *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). Skid may not have had the benefit of month-end sales data.[16] But this not a fact from which a reasonable jury could conclude that Plaintiff's demotion was a pretext for age discrimination.

Second, Plaintiff contends that he was a good manager but less-qualified, younger employees received more opportunities. Plaintiff provides no evidence that younger[17] managers were unable to learn the software but still kept their positions. Skid testified in deposition that another manager who was hired around the time Plaintiff was demoted was necessarily "less experienced" because he was younger than Plaintiff. Plaintiff believes this shows that Defendant admitted to hiring less-qualified candidates to fill Plaintiff's managerial role. But the sort of "experience" Plaintiff refers to is auto-sales experience. This is distinct from managerial experience. And Plaintiff has presented no information about the business conditions at the dealership when these individuals were hired, their substantive experience or background, or whether they were hired under circumstances that could cause a trier of fact to disbelieve Defendant's explanation for Plaintiff's demotion.[18] Plaintiff complains that he was denied sales

---

[16] Plaintiff does not provide the month-end sales data, so it is entirely unclear whether this information would even support his position.

[17] The Court understands that the ADEA addresses the treatment of employees over the age of forty as compared to the treatment of <u>substantially</u> younger people. For ease of reference, the Court at times simplifies and refers to them as younger employees.

[18] The Court notes one overarching problem with any claim based on Plaintiff's demotion. Only thirty days passed between when Plaintiff was hired and when he was demoted. Skid hired Plaintiff on Day One, and hired him at a higher level than he originally wanted to. Plaintiff's age and race and probably his national origin would have been apparent to Skid on Day One. It is far-fetched that on Day Thirty, Skid would decide to demote Plaintiff because of his age, race, or national origin. Plaintiff has identified no change in circumstances that would justify an

leads, which ultimately led to less pay. But he does not have evidence that the leads were instead given to younger salespeople. The only comparators Plaintiff identifies are younger employees who were managers, not salespeople.

Third, Plaintiff claims that competitive practices and foul language were rampant among salespeople. But Plaintiff does not identify any younger person who engaged in similar conduct but was not terminated. Instead, he claims that Rodriguez was not "distressed" by the confrontation because she did not complain about or report Plaintiff after their argument. But this does not create a submissible issue of fact about whether Defendant's explanation for Plaintiff's termination is pretextual. Again, the Court does not sit as a "super-personnel" department. Granger's decision to terminate Plaintiff for the confrontation may very well have been bad, unfair, impulsive, or irrational. *See Weld Cnty. Colo.*, 594 F.3d at 1211. And it may not have even been the "real" reason for Plaintiff's termination. But so long as the "real" reason (i.e., that Plaintiff wasn't producing as much as expected or that Plaintiff complained excessively in the workplace) was not unlawful discrimination, then the termination did not violate federal employment law. What matters is that Plaintiff's protected classification did not motivate the decision. Plaintiff has no evidence that Granger did not genuinely believe the rationale he gave for Plaintiff's termination. Much is missing from the record about the circumstances, tone, and tenor of the confrontation, who may have witnessed it, and how those individuals may have viewed it. This is evidence Plaintiff bears the burden to supply. He has not done so.

Finally, Skid's age-tinged comments are nothing more than stray comments, which do not call into question Defendant's justification for its actions. *See Kirkpatrick v. Pfizer, Inc.*, 391 F.

---

inference that his demotion was based on discriminatory motive. Skid made both decisions. Defendant notes these facts in its opening brief but does not raise the "same actor" inference until its reply. Plaintiff never moved to strike or for leave to file a surreply. The Court does not apply the "same actor" inference out of an abundance of caution and because it is unnecessary to the outcome of the motion, but the facts speak for themselves.

App'x 712, 720 (10th Cir. 2010); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 231 (10th Cir. 1994). Nor has Plaintiff connected the remarks to his demotion. *Id.* And Skid's comments about his reluctance to have older employees return to the dealership in the aftermath of COVID-19 lockdowns were likely made months <u>before</u> Plaintiff's initial hiring as sales manager. *See* Doc. 73 at 7. Plaintiff was a new hire, not a furloughed employee. The temporal sequence of the statements and Plaintiff's hiring undermines the value of this evidence.

Plaintiff fails to show that he was treated less favorably than substantially younger employees. No reasonable jury could hold for Plaintiff on this claim, so the Court grants summary judgment for Defendant.

### 2. Discrimination Claim Based on National Origin and Race.

Plaintiff's next claim is that Defendant discriminated against him based on his national origin and race.[19] Similar problems plague this claim as those with Plaintiff's age-based discrimination claim.

### a. Prima Facie Case.

A plaintiff establishes a prima facie case of discrimination by establishing that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; and (3) the circumstances give rise to an inference of discrimination. *See Stockdale v. Marriott Int'l*, 2013 WL 5304012, at *3 (D. Kan. 2013) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).

Plaintiff's discrimination claim based on national origin is not supported by any evidence. Again, Plaintiff is a member of a protected class[20] and suffered an adverse employment action. But

---

[19]  It is unclear whether Plaintiff intends to challenge the same three actions: demotion, his pay, and the termination. The Court addresses all three out of an abundance of caution.

[20]  Plaintiff claims to be of Caribbean descent. But he also says there is no "nation" of the Caribbean. Doc. 66 at 8. He does not specifically identify his country of origin. This confuses the issue. But the Court assumes Plaintiff hails from a country outside the United States.

he has no evidence suggesting the circumstances give rise to an inference of discrimination. Skid and Granger were the relevant decision-makers who hired, demoted, and terminated Plaintiff's employment. Skid also controlled Plaintiff's pay. There is no evidence that either man ever commented on or otherwise acknowledged Plaintiff's national origin. There is evidence that other employees made fun of him or thought his accent was difficult to understand.[21] But there is no evidence that either decision-maker took any actions under circumstances that give rise to an inference of discrimination.

Plaintiff's race discrimination claim is a little different. This claim suffers from many of the same maladies that Plaintiff's age-based claim does. But the Court will assume that Plaintiff has proffered enough evidence that suggests that Plaintiff was demoted, paid less, and terminated under circumstances giving rise to an inference of discrimination. The Court therefore proceeds to the remainder of the *McDonnell Douglas* test.

### b.      Legitimate, Non-Discriminatory Reason.

Again, Defendant proffers legitimate, non-discriminatory reasons for its actions (e.g., his subpar performance as a manager and encounter with Rodriguez). The burden thus shifts back to Plaintiff to show that Defendant's reasons are pretextual.

### c.      Pretext.

Plaintiff's evidence of pretext on his race discrimination claim overlaps with the evidence he cites in support of his age discrimination claim. It fares no better. Plaintiff again represents that other individuals were not disciplined for foul language or arguing. The Court addresses that argument from a slightly different angle than before. Plaintiff also argues (again without

---

[21]  The Taylor declaration states, "Judge was teased by Skid and others about his accent." Doc. 68 at 4. Even if the Court found it appropriate to consider the Taylor declaration, this statement is insufficient to create a genuine issue of material fact about whether Skid took any adverse action based on Plaintiff's national origin.

substance) that he was paid less than white similarly situated employees. The Court briefly addresses the lack of evidence to support Plaintiff's pay-based contention and then turns to Plaintiff's third argument—that Skid's use of racially charged language at the dealership shows pretext.

Plaintiff again contends that no other individuals were disciplined for using foul language or arguing over a commission. Generally, differential treatment between an employee in a protected group and a similarly situated employee who is not in that group that is "not premised on a rational business policy" can be used to demonstrate pretext. *EEOC v. Flasher Co.*, 986 F.2d 1312, 1320 (10th Cir. 1992); *Swackhammer*, 493 F.3d at 1167-68. To make a pretext argument based on differential treatment, Plaintiff needs to show that: (1) similarly situated colleagues transgressed work rules of comparable seriousness; (2) Defendant treated those similarly situated colleagues differently (i.e., did not terminate their employment); and (3) the differential treatment was not "trivial, accidental, or explained by nondiscriminatory motive." *Herrera v. United Airlines, Inc.*, 754 F. App'x 684, 692 (10th Cir. 2018) (citation omitted). To be "similarly situated," the comparators must have "dealt with the same supervisor and . . . been subject to the same standards governing performance evaluation and discipline." *Id.* (internal quotation marks omitted).

Plaintiff offers imprecise anecdotal testimony from co-workers that profanity was used "all the time," and that it was used with frequency by Skid. But missing from this testimony (and the rest of the record) is a comparator similarly situated to Plaintiff, not black, whose conduct mirrored Plaintiff's. The absence of any such evidence is fatal to the analysis. It fails to give rise to an inference that Defendant's termination decision was a pretextual cover for intentional race

discrimination.[22]

Plaintiff's race-based disparate pay argument fails for the same reasons he failed to show that he was paid less because of his age. Plaintiff merely offers some generalized testimony about how much money various managers and employees make at the dealership. He claims that "there is no question that [Plaintiff] was paid significantly less than other white similarly-situated employees." Doc. 66 at 29. But he offers no comparison of qualifications, experience, positions, supervisors, or even actual salaries. *Id.* at 11-12 (citing salary ranges from $100,000 to over $1,000,000 but only specifically citing Garibaldo's February 2021 pay, when he earned nearly $20,000 in sales commission). And as the Court previously noted, two employees who made more than Plaintiff (Taylor and Miller) were both black. Plaintiff has offered no evidence from which a reasonable jury could find that Defendant structured Plaintiff's compensation plan or denied him sales leads (impacting his pay) based on his race.

Skid's use of racial epithets in the workplace also fails to demonstrate pretext. There is an issue of fact as to the pervasiveness of Skid's use of racial epithets. But Plaintiff has not offered <u>any</u> evidence to connect Skid's use of those epithets to the adverse employment decisions Plaintiff suffered. *Timmerman v. U.S. Bank*, 483 F.3d 1106, 1117-18 (10th Cir. 2007); *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1010 (10th Cir. 2001).

Finally, the Court notes that Plaintiff and Granger are both members of two of the same protected groups. This does not mean that Defendant receives an inference of non-discrimination. *Clay v. United Parcel Serv., Inc.*, 2014 WL 5298173, at *6 (D. Kan. 2014) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)). But the Court also does not ignore this

---

[22] The evidence supports the opposite conclusion. Defendant employed many other minority employees who were not demoted or terminated. Stated differently, Plaintiff ignores evidence of other employees in his own protected classes who did not experience an adverse employment action.

fact. *Id.* Stated differently, that Plaintiff and Granger are part of the some of the same protected groups is not dispositive. But it does undermine the probability that Plaintiff's national origin or race played a role in the employment decisions. *Almon v. Goodyear Tire & Rubber Co.*, 2009 WL 1421199, at *7 (D. Kan. 2009).

Plaintiff fails to meet his burden to show that the reasons for Defendant's employment decisions were pretext for discrimination. The Court grants summary judgment on this claim.

### B.    Claim for Hostile Work Environment Based on National Origin and Race.

Plaintiff claims that he was subjected to a hostile work environment because of his national origin and race.[23] A plaintiff overcomes summary judgment on a hostile-work-environment claim by first showing that (1) he was discriminated against because of his national origin or race, and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his employment. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021). "Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." *Id*. at 1252. A plaintiff must, however, "show that the environment was both objectively and subjectively hostile or abusive." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (citation omitted). A court must evaluate the totality of the circumstances and "consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Throupe*, 988 F.3d at 1252 (citation omitted).

---

[23] These claims are not overtly identified in the pretrial order as hostile work environment claims. Plaintiff's counsel should take more care in the future to ensure the pretrial order specifically identifies any claim he intends to pursue at trial. The pretrial order "Claims" section does reference Counts I and II from the original state court petition. Counts I and II are for race- and national-origin-based hostile work environment and disparate treatment. And Defendant anticipated the claims for hostile work environment remained in the case and fully briefed why summary judgment is warranted on them. The Court construes the pretrial order broadly and allows Plaintiff to pursue the harassment/hostile work environment claims. But the claim is only based on race and national origin; not age.

Isolated and sporadic racial remarks are insufficient. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). A plaintiff must show "a steady barrage of opprobrious racial comments." *Id.*

The Court examines the totality of the circumstances. Again, there is simply no evidence supporting a hostile work environment based on Plaintiff's national origin. The only evidence supporting this claim is that some employees made fun of him and thought his accent was difficult to understand. This evidence fails to meet the standard for hostile work environment liability. Plaintiff offers at most "isolated incidents of enmity." *Sidlo*, 718 F. App'x at 728 (quoting *Lounds*, 812 F.3d at 1222)). But "mere utterance[s] of . . . statement[s] which engender[ ] offensive feelings in an employee [do] not affect the conditions of employment to a sufficiently significant degree to violate" the federal civil rights laws. *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (internal quotation marks omitted). This evidence comes nowhere near to establishing a triable claim of hostile work environment based on national origin.

Race, on the other hand, is a different matter. A reasonable jury could find that the dealership work environment was both objectively and subjectively hostile. Plaintiff presents evidence that Skid's racially offensive language pervaded the office culture. Skid was not a mere co-worker; he held a position of authority in the dealership. Rodriguez states that Skid regularly played rap music in the office with offensive language. And Plaintiff contends that Skid regularly, openly, and freely used racial slurs in the workplace. Skid concedes that during the January 2021 meeting he said, "[W]hy do you keep pumping Trump up in these meetings where he doesn't like [ ] the N-word, n-i-g-g-a," without trying to hide the racial slur or mask its use. The testimony indicates that the word was not used in anger or in the "heat of the moment." Skid was not quoting a song, movie, or book nor was he repeating a comment from someone else. And there is no suggestion that he apologized for it afterward or that he seemed embarrassed or ashamed in the

moment. Skid also admitted that he regularly spoke with friends using such terminology. He offered explanations for when, why, and with whom he used the terminology. These admissions lend some credence to Plaintiff's contention of Skid's regular use of slurs in the workplace. A reasonable jury could find that Plaintiff was subjected to the "steady barrage" of opprobrious comments necessary to survive a summary-judgment motion. *Morris*, 666 F.3d at 666.

The Court gives Plaintiff the benefit of the inferences at this stage of the litigation. Plaintiff has presented a triable issue of fact for a jury to resolve. The Court denies summary judgment on Plaintiff's race-based hostile work environment claim.

### C.    Retaliation Claim.

Plaintiff's final claim is that Defendant retaliated against him for challenging Defendant's age, national origin, and race-based discriminatory actions.[24] The *McDonnell Douglas* burden-shifting framework applies to this claim. *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015).

### 1.    Prima Facie Case.

A prima facie case of retaliation under Title VII requires a plaintiff to show: (1) he engaged in protected activity; (2) he suffered an adverse employment action during or after his protected activity, which a reasonable employee would have found materially adverse; and (3) there was a causal connection between the protected activity and the adverse action. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013). Defendant challenges the first and third elements.

---

[24] The pretrial order references retaliation claims under Title VII, § 1981, the ADEA, and the ADA. Doc. 65 at 6. This is the only place the ADA is mentioned, and the case has not proceeded under a disability discrimination or retaliation theory. The pretrial order includes no further reference to a disability-based claim other than in the title to Plaintiff's third claim. There are no facts supporting it or explanation of the theory.  Defendant moves to modify the pretrial order to delete any claim under the ADA. Doc. 79. Plaintiff opposes but offers no justification why a disability claim should be added to the case a few months before trial. It appears the parties overlooked the addition of the ADA reference in the pretrial order when submitting it for the magistrate judge's determination. Allowing a new claim that has not been previously asserted or subject to discovery is untimely and prejudicial. The Court grants Defendant's motion to delete the single reference to the ADA from the pretrial order.

a.       **Protected Activity.**

Protected opposition occurs when an employee conveys to his employer that the employer has done something unlawful under the federal anti-discrimination laws. It need not be formal. There are not any "magic words" an employee must use when communicating his opposition. But general complaints about how the employer runs its business or complaints vaguely referencing "discrimination" or "harassment" that do not give some indication that the conduct at-issue is unlawful under the anti-discrimination statutes are not enough. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203, 1203 n.13 (10th Cir. 2008).

Plaintiff made multiple complaints. But nearly all of them fall outside this definition. In particular, Plaintiff's complaints about slipping on ice in the dealership's lot, being removed arbitrarily from the sales lead rotation, being denied the training necessary to do his job as a sales manager, being demeaned by hostile co-workers, and general statements about "discrimination" and "retaliation" are not the sort of complaints that would convey to Defendant that Defendant has "engaged in a practice made unlawful by" the anti-discrimination laws. These are generalized grievances that do not support a retaliation claim.[25]

Plaintiff began recording work conversations. He claims that this signaled to Granger that he intended to sue the dealership. But this sort of activity is not protected under the anti-discrimination laws either. *See, e.g.*, *Ellis v. Compass Grp. USA, Inc.*, 2010 WL 4792668, at *10 (E.D. Tex. 2010) (attempts to record co-workers' statements unreasonable and not protected because efforts interfered with plaintiff's job performance and job performance of co-workers).

---

[25]   One statement in the Taylor declaration could suggest that some of Plaintiff's complaints were more specific. Taylor states, "Jude often complained about the discriminatory and retaliatory treatment older employees and black employees received while working at [the dealership]." Doc. 68 at 4. Even if the Court were to consider the statement, it doesn't make a difference. It is a conclusory statement that is insufficient to create a genuine issue of material fact as to whether, when, and to whom Plaintiff made specific complaints that constitute protected activity.

Some of Plaintiff's conduct arguably could qualify as protected activity. This includes Plaintiff's December 2020 EEOC inquiry and his complaint to Granger about Skid's use of the racial slur during the January 2021 meeting. The Court continues the prima facie analysis for these complaints.

### b.      Materially Adverse Employment Action

Plaintiff contends that both his demotion and termination were retaliatory. The parties do not dispute that these constitute materially adverse employment actions.

### c.      Causation

The critical problem with Plaintiff's retaliation claim is that he cannot establish causation. To causally connect Plaintiff's EEOC inquiry or complaint to Granger about the racial slur, Plaintiff must present "evidence of but-for causation . . . based on more than mere speculation, conjecture, or surmise." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (quotation omitted). A court may presume causation if an adverse employment action is very closely tied in time. *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011).

The demotion happened a month after Plaintiff started working for Defendant. Plaintiff claims that he started complaining shortly after he started. But he does not specifically identify any of the complaints that happened before his demotion. There is simply no basis to connect the demotion with any protected activity. And the retaliation must be responsive to protected activity related to Plaintiff's age, national origin, or race—not Plaintiff's general displeasure with  not being trained or with working conditions at the dealership.

Plaintiff's termination was after the EEOC inquiry and the January 2021 complaint. But Plaintiff has not shown Defendant was even aware of his EEOC inquiry. *Hankishiyev v. ARUP Lab'ys*, 732 F. App'x 673, 677 (10th Cir. 2018) (employer knowledge necessary condition for

causation). And both the December 2020 EEOC inquiry and the January 2021 complaint are too temporally remote from Plaintiff's termination in May 2021 to create an inference of discrimination absent some additional evidence to create a causal connection. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (three-month period without more is insufficient to establish causation). And there is no evidence that the complaints that were closer in time to Plaintiff's termination (about sales leads in March and April 2021, about Sargent to Cole in April 2021, and his May 4 complaint about compensation to Morrison) had anything to do with Plaintiff's age, national origin, or race. Plaintiff's complaints that were temporally proximate to his termination lacked the specificity necessary to count as protected activity. In some instances, Plaintiff did not even complain to Granger or Skid.

What is left are generic statements scattered throughout the record that Plaintiff made known his intent to sue Defendant. The timing of these statements is unclear and the grounds for the lawsuit are unclear. Plaintiff's communication of an amorphous intent to sue is no more protected than ambiguous conclusory complaints of harassment and discrimination. And even assuming that Granger and Skid knew of Plaintiff's intent to sue, evidence is required that they expected Plaintiff to sue under a federal civil rights statute, whether the ADEA, Title VII, or § 1981. *See Oldridge v. City of Wichita*, 2023 WL 3965839, at *5-6 (10th Cir. 2023) (rejecting circumstantial theory of "anticipatory retaliation" where underlying evidence failed to demonstrate that decisionmakers were made aware of Plaintiff's intention to sue under a specific federal civil rights statute). This evidence is missing.[26]

---

[26] Taylor makes a statement in his declaration targeted at filling this hole: "Jude also made it known to [dealership] management and coworkers that he intended to take legal action against [the dealership] because of the treatment he was receiving as an older, African American of Caribbean descent." Doc. 68 at 4. Again, Taylor's assertion is conclusory and does not identify how, when, or to whom Jude made his specific intent to sue known. Considering the statement would not change the outcome of the case.

Plaintiff has not made out a prima facie case for unlawful retaliation under Title VII, § 1981, or the ADEA.[27] No reasonable jury could find for Plaintiff on his claims of retaliation. But the Court will briefly address the rest of the *McDonnell Douglas* test because there is some overlap in the causation and pretext analysis.

### 2.    Legitimate, Non-Retaliatory Reason

The Court has twice identified Defendant's legitimate, non-retaliatory reasons for Plaintiff's demotion and termination. It need not be repeated here. Suffice it to say, Defendant meets its burden.

### 3.    Pretext

Because Defendant offers legitimate, non-discriminatory reasons for its actions, the burden reverts to Plaintiff. Plaintiff has not carried that burden.

Temporal proximity is one factor in retaliation cases that can lead to a finding of pretext. But it is not enough standing alone. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1236 n.10 (10th Cir. 2015). Unless the proximity is very close, it must be combined with other evidence to suggest that the stated reason for the adverse employment action is unworthy of belief. *Id.*; *see also Hysten v. Burlington N. Santa Fe Ry. Co.*, 296 F.3d 1177, 1183-84 (10th Cir. 2002) (noting that a three-month period between the protected conduct and termination is not sufficient to raise an inference of retaliation).

Time is the only potential connector between Plaintiff's protected activity and Defendant's actions. The record suggests that Plaintiff made complaints almost daily. But the Court returns to the content of those complaints. Very few of them were specifically about unlawful discrimination.

---

[27] The same evidence considered here also supports a determination of no pretext. The end result is the same, regardless of whether the Court considers the evidence in the first *McDonnell Douglas* inquiry or the third.

And those that qualify as protected activity were temporally removed from any adverse action. There is nothing in the record from which the Court can find pretext.

Plaintiff has presented no evidence suggesting an issue of material fact exists about whether Defendant's actions were retaliatory in nature. And no reasonable jury could find in his favor on this record. The Court grants summary judgment on Plaintiff's retaliation claim.

## V.    CONCLUSION

The Court carefully reviewed the record. The hostile work environment claim based on race survives for trial. Defendant is entitled to summary judgment on the rest of Plaintiff's claims.

THE COURT THEREFORE ORDERS that Defendant's motion (Doc. 58) is GRANTED IN PART AND DENIED IN PART. The Court DENIES the motion with respect to Plaintiff's claim for hostile work environment on the basis of race pursuant to Title VII and § 1981. The Court GRANTS the motion as to all Plaintiff's remaining claims.

THE COURT FURTHER ORDERS that Defendant's motion to strike (Doc. 74) is GRANTED IN PART AND DENIED IN PART. The Court strikes the Taylor statement and denies the rest of the motion.

THE COURT FURTHER ORDERS that Defendant's motion to modify the pretrial order (Doc. 79) is GRANTED. Any reference to an ADA claim is removed from the pretrial order.

IT IS SO ORDERED.

Dated: December 13, 2023                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE